Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 72 | **DATE** | 8/6/2003 |
| **CASE TITLE** | LABORERS' PENSION FUND, et al. vs. RES ENVIRONMENTAL SVCS., INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Plaintiff's Motion for Summary Judgment (doc. #12)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Plaintiffs' Motion for Summary Judgment (doc. #12) is **granted.** Judgment is entered in favor of plaintiffs and against defendant in the amount of $226,453.38, plus reasonable attorney's fees and costs. Plaintiffs shall file its petition for attorney's fee and costs by 8/28/03. Defendant to file objections, if any, by 9/11/03. Enter Memorandum Order and Opinion. All pending dates and motions are terminated as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | AUG 07 2003 | |
| | Notified counsel by telephone. | date docketed | 25 |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| JHC | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LABORERS' PENSION FUND and )
LABORERS' WELFARE FUND OF THE )
HEALTH AND WELFARE DEPARTMENT )
OF THE CONSTRUCTION AND GENERAL )
LABORERS' DISTRICT COUNCIL OF )
CHICAGO AND VICINITY, )
                                            )    No. 01 C 0072
           Plaintiffs,     )
                                            )    Honorable William J. Hibbler
           v.                          )
                                            )
RES ENVIRONMENTAL SERVICES, INC., )
an Illinois corporation, )
                                            )
           Defendant.    )

DOCKETED
AUG 0 7 2003

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Laborers' Pension Fund and Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity (the "Funds"), bring this civil action against defendant RES Environmental Services, Inc. pursuant to the Employment Retirement Income Security Act of 1974, 29 U.S.C. § 1132 *et seq.* ("ERISA") and Labor Management Relations Act of 1947, 29 U.S.C. § 185 *et seq.* ("LMRA"). Through this lawsuit, the Funds are attempting to collect delinquent employee benefit contributions required under a collective bargaining agreement negotiated between RES and its employees' union. The parties have completed written discovery and the Funds now move for summary judgment. For the reasons below, the Funds' motion is **granted**.

## I. Background

The Funds are multi-employer trust funds that provide fringe benefits to RES's employees. The Funds' revenue is generated in part by contributions it receives from employers such as RES. RES's contribution obligations are stated in a collective bargaining agreement negotiated between RES and its employees' union (the "Agreement"). The Agreement requires RES to make regular contributions to the Funds on behalf of its employees covered therein for pension, health, and welfare benefits and to submit monthly remittance reports identifying each covered employee and its corresponding contribution. Additionally, the Agreement incorporates the Funds' respective Trust Agreements, which require RES to pay liquidated damages and interest if RES's contributions become delinquent.

In an effort to determine whether RES was making the required contributions, the Funds designated two firms to audit RES's books and records. The first audit, referred to as the Wolf Report, focused on the period of July 1, 1994 to December 31, 1997 and found that RES owed $74,452.66 in delinquent contributions, accrued interest, liquidated damages, and audit costs. The second audit, referred to as the Graff Report, covered the period January 1, 1998 to July 31, 2001 and found that RES owed $222,441.68 in delinquent contributions, accrued interest, liquidated damages, and audit costs. After the audits were completed, a Funds representative met with RES to discuss the results. In response to RES's challenges regarding the Wolf Report, the Funds agreed to reduce the total amount owed from $74,452.66 to $4,011.69.[1] RES also challenged the findings of the Graff Report, but the Funds have refused to reduce the second audit's total.

The focus of the present lawsuit is on the findings of the Graff Report. RES claims that it

---

[1] RES admits that it owes this revised amount. See Defendant's Response to Plaintiff Rule 56.1 Statement of Material Facts, para. 16.

provided the Funds with information pointing out numerous errors in the report but the Funds have repeatedly refused to adjust the claimed delinquency. To support its claim, RES attaches the affidavit of its owner, Wiley Stewart, who states that the Graff Report improperly includes *employees*, such as foreman and supervisors, who are not covered by the Agreement. Stewart also argues that the Graff Report includes hours relating to *work* not within the scope of the Agreement. Stewart concludes that these errors raise serious doubts regarding the Graff Report's accuracy, which preclude the Court from deciding the matter on summary judgement.

In response, the Funds claim that RES's managerial employees were properly included because such employees also served as non-managerial employees during the relevant time period. The Funds further argue that the Agreement does not distinguish between covered and non-covered work, but focuses only on whether the employee is covered under the Agreement. Alternatively, the Funds argue that the Court should disregard RES's claims because RES has failed to support its challenges with sufficient evidence.

## II. Standard of Review

Summary judgment is proper where "the pleading, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in that party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## III. Discussion

As an initial matter, the Court notes that RES admits to owing the full amount of delinquent contributions and corresponding penalties claimed in the revised Wolf Report. Accordingly, as

3

there is no dispute of material fact regarding the results of the revised Wolf Report, the Court will enter judgment in the amount of $4,011.69 in favor of the Funds.

On the other hand, RES disputes the damages claimed by Graff Report. RES challenges both the type of *employees* and the type of *work* included in the report. Specifically, RES claims that the Graff Report improperly included hours worked by certain managerial employees (foreman and supervisors) that are not covered under the Agreement. RES further claims that the Graff Report improperly included hours spent by RES employee performing work outside the scope of the Agreement. RES concludes that these errors resulted in a significant overstatement of its liability.

1.  *Supervisory Employees*

The Funds claim that supervisory employees were included in the Graff Report because they also held non-supervisory positions during the relevant time period. In support of its position, the Funds cite a provision of the Agreement that requires contributions for supervisory employees if such employees also held non-supervisory positions for which RES made contributions on their behalf. RES does not dispute the that the Agreement requires as much or that the challenged supervisory employees also held non-supervisory positions. Rather, RES argues that it has not been the Funds' regular practice to include the hours of employees who later move into management positions. RES does not, however, provide the Court with any evidence to support this assertion. The Court has nothing to consider but the Agreement's unambiguous and undisputed requirements regarding the treatment of supervisory employees who also held non-supervisory positions for which RES paid contributions. The Court must therefore conclude that there is no genuine issue of fact regarding whether the Graff Report properly included RES's supervisory employees. Accordingly, the Funds are entitled to collect the delinquent contributions and associated damages relating to RES's supervisory employees included in the Graff Report.

4

2. *Non-Covered Work*

RES also claims that the Graff Report includes hours spent by RES employees performing work outside the scope of the Agreement. RES argues that the Agreement only requires contributions for work relating to asbestos removal but the Graff Report includes hours spent by RES employees on wholly unrelated work, such as maintenance of RES equipment and waste hauling activities. RES therefore claims that the Graff Report significantly overstates the number of hours worked by RES employees. In response, the Funds dispute that the Agreement distinguishes between covered and non-covered work. Rather, the Funds claim that as long the employee is covered under the Agreement, then all work the employee performs is covered by the Agreement. Alternatively, the Funds argue that even if the Agreement distinguishes between covered and non-covered work, RES has not produced sufficient evidence to establish the precise time period during which its employees performed work outside the Agreement's scope.

The Funds' argument that the Agreement fails to distinguish between covered and non-covered is without merit. Multiple provisions of the Agreement refer to "covered" and "non-covered" work. *See, e.g.,* Joint Agreement covering June 1, 1998 - May 31, 2001, paras. 4(a), 5; Asbestos Agreement covering June 1, 1998-May 31-2004, para. 4(a). Moreover, the Funds admit that certain categories of work, namely the maintenance and cleaning of RES equipment, are not within the scope of the Agreement. *See* Plaintiff's Response to Defendant's Rule 56.1 Statement of Additional Facts, para. 4. The Funds' argument is therefore untenable.

The Funds propose an alternative argument to support their position that the Court should disregard RES's contention that the Graff Report includes hours devoted towards uncovered work. The Funds claim that they are entitled to judgment for all hours worked by RES employees because RES fails to corroborate its challenges with evidence showing the precise amount of covered worked

5

performed. The Funds find this evidentiary burden in three courts of appeal decisions that require employers seeking to challenge a fund's audit to come forward with evidence showing the precise amount of covered work performed by the company's employees. *Michigan Laborers' Health Care Fund v. Grimaldi Concrete*, 30 F.3d 692, 696 (6th Cir. 1994); *Brick Masons Pension Trust v. Industrial Fence & Supply, Inc.*, 839 F.2d 1333, 1338 (9th Cir. 1988); *Combs v. King*, 764 F.2d 818, 822-27 (11th Cir. 1985). The burden of coming forward with evidence is imposed on employers only if a fund raises genuine questions about the accuracy of the employer's record keeping practices. *Laborers' Pension Fund v. A & C Environmental, Inc.*, 301 F.3d 768, 783 (7th Cir. 2002). Here, the Funds claim that RES kept no contemporaneous time records reflecting the type of work performed, the date the work was performed, or the work location. The Funds assert that this record keeping failure prevented the Funds' auditors from accurately determining the amount of covered work performed by RES employees. RES does not submit a single document to contradict the Funds' assertions. RES has not come forward with any evidence whatsoever setting forth the hours worked on covered projects, or the laborers who were working on those projects. The Court therefore finds that RES's has failed support its challenge with sufficient evidence. *See Operating Engineers Pension Trusts v. B & E Backhoe Inc.*, 911 F.2d 1347, 1354 (9th Cir. 1990) (employer does not meet burden of proof if it does not come forward with evidence of the number of hours spent performing covered work).

Generally, when an employer fails to come forward with evidence of the extent of covered worked performed by its employee, the fund is entitled, as matter of law, to recover contributions for all hours worked by these employees during the quarter in which they were shown to have performed some covered work for the employer. *See, e.g., Michigan Laborers'*, 30 F.3d at 696; *Brick Masons*, 839 F.2d at 1338. However, this rule does not apply to compel judgment against an employer when the employer raises genuine issues of material fact as to the accuracy of the fund's calculations. *Illinois*

6

*Conference of Teamsters and Employers Welfare Fund v. Steve Gilbert Trucking*, 71 F.3d 1361, 1367 (7th Cir. 1995). The only evidence offered by RES to challenge the audit's accuracy is the affidavit of its president, Wiley Stewart. In his affidavit, Steward alleges it has been his "personal experience that the accounting firms who perform audits to verify the amounts of contributions that may be owed regularly include employees and hours that are not covered by the Agreement." *Stewart Aff.*, para. 8. Stewart's generalized past experiences do not create present disputes of fact. The affidavit also alleges that the auditors included hours spent by five RES employees who performed non-covered work. But Stewart does not explain how many hours were improperly included or what type of work these employees performed. Nor does Stewart reference the Court to any documents supporting his statements. Without such evidentiary support, Stewart's non-specific and conclusory allegations cannot create genuine issues of material fact regarding the Graff Report's accuracy. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (summary judgment is not a place "to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."). As RES has not provided any specific facts supporting its challenges, the Court finds that RES has not raise a genuine issue of material fact regarding the accuracy of the Fund's calculations. Accordingly, the Funds are entitled to recover contributions for all hours worked by RES employees during the time such employees were shown to have performed some covered work.

    3.    *Liquidated Damages, Interests, Audit Costs, and Attorney's Fees*

The final issue regards the Funds' request for liquidated damages, interest, audit costs, and attorneys fees. ERISA *requires* the court to award attorney's fees and costs to a prevailing fiduciary in an action to collect delinquent fringe benefits fund contributions. 1132(g)(2). Given that section 1132(g)(2) is non-discretionary, the Funds are entitled to reasonable attorney's fees and costs incurred attempting to collect the delinquent contributions, including the audit fees. *Plumbers'*

*Pension Fund v. Domas Mechanical Contractors, Inc.*, 778 F.2d 1266, 1271 (7th Cir. 1985). Section 1132(g)(2) also permits the prevailing party to collect the interest on the unpaid contributions plus liquidated damages as provided for under the relevant benefit plan. Here, the Fund's Trust Agreements require RES to pay liquidated damages in the amount of 10 per cent of the principal amount of delinquent contributions, and interest at a rate of prime plus 2 per cent on all delinquent amounts from the date of delinquency forward. The Funds are entitled to these defined penalties.[2] *Operating Engineers Local 139 Health Benefit Fund v. Gustafson Construction Corp.*, 258 F.3d 645, 655 (7th Cir. 2001); *Central States, Southeast and Southwest Areas Pension Fund v. Gerber Truck Serv., Inc.*, 870 F.2d 1148, 1156 (7th Cir. 1989).

As RES has not produced any specific information refuting the Graff Report's calculations of delinquent contributions, liquidated damages, or interests costs, judgement shall be entered in favor of the Funds for the full amount claimed, or $222,441.69. *See Chicago District Council of Carpenters Pension Fund v. P.M.Q.T., Inc.*, 169 F.R.D. 336, 345 (N.D.Ill. 1996)(defendants' failure to provide any documents to disprove the auditor's findings provided independent basis for court's determination that auditor's report was the proper measure of damages).

## IV. Conclusion

The Court finds that no dispute of material facts exists regarding RES's liability for unpaid contributions and associated penalties as claimed in revised Wolf Report. Judgement is therefore entered in the amount of $4,011.69 in favor of the Funds. Additionally, the Court finds that no

---

[2]The Funds also claim that RES owes $3,065.39 representing liquidated damages for untimely paid late fees for the period December 1999 through December 2001. However, the Funds do not support this allegation with any documentary evidence nor do they reference a specific provision of the Trust Agreement allowing for this penalty. Accordingly, the Funds' request is denied.

8

dispute of fact exists regarding RES's liability for unpaid contributions and associated damages as claimed in the Graff Report. Judgement is therefore entered in the amount of $222,441.69 in favor of the Funds. Lastly, the Court finds that the Funds are entitled to attorney's fees and costs incurred prosecuting this action. The Funds shall file, within twenty-one days from the date of this Order, a petition for attorney's fees and costs.

IT IS SO ORDERED.

August 6, 2003

William J. Hibbler
United States District Court Judge